**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | Case No. | 23-20653 (JJT) |
| | ) | | |
| CHRISTOPHER J. PALLIS | ) | Chapter | 7 |
| | ) | | |
| Debtor. | ) | Re: ECF Nos. | 11, 19 |
| | ) | | |

**MEMORANDUM OF DECISION AND RULING ON CHAPTER 7**
**TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION**

**I.  INTRODUCTION**

Before the Court is an Objection to Debtor's Claim of Exemption filed by the Chapter 7 Trustee ("Trustee"), Bonnie C. Mangan, in which the Trustee objects to the homestead exemption claimed by Christopher J. Pallis ("Debtor") in his Chapter 7 case. (ECF No. 11, "Objection"). The Objection arises out of the claim of a homestead exemption on a parcel of real property located at 12 Virginia Lane, Tolland, Connecticut (the "Property") owned together by the Debtor and his estranged spouse that is the subject of a *pendente lite* order in an underlying dissolution of marriage proceeding currently pending before the Connecticut Superior Court. For the reasons that follow, the Court finds that the Trustee has failed to satisfy her burden in demonstrating that the Debtor's claimed homestead exemption is improper.

The Debtor in this case was involved in a currently-pending dissolution of marriage action when he filed his Chapter 7 Voluntary Petition on August 21, 2023. The Court takes judicial notice of that domestic action in the Connecticut Superior Court ("Superior Court"), found at *Pallis v. Pallis*, No. TTD-FA22-5016224-S (Conn. Super. Ct. filed Aug. 18, 2022). Further, the Court takes judicial notice of the relevant orders and pleadings submitted for the record under seal at ECF No. 31, Exs. A–CC. As part of that pending case, the Superior Court

entered a *pendente lite* order that granted exclusive use and possession of the Property to the Debtor's spouse. (ECF No. 31, Ex. C, docketed on the Superior Court docket as Order, Entry No. 102.10). That case also included a proposed order constituting a stipulation between the parties that contemplated intermediate use of the Property by both the Debtor and the spouse for the purposes of coparenting. (ECF No. 31, Ex. Q, docketed on the Superior Court docket as Stipulation, Entry No. 134 (the "July 10, 2023 Proposed Order")). That July 10, 2023 Proposed Order was later approved by an order of the Superior Court. (ECF No. 31, Ex. R, docketed on the Superior Court docket as Order, Entry No. 134.10).

The Debtor and his estranged spouse acquired their house as their family home in July of 2009. (ECF No. 19 at 1). Since that time, the Debtor and his spouse have held title jointly. (ECF No. 19, Ex. B). As noted previously, in August of 2022, the Debtor's spouse was awarded "exclusive use and possession [of the marital home] . . . pendente lite." (ECF No. 31, Ex. C). Until his compliance with that *pendente lite* order, the Debtor resided in that home as his primary residence with his wife and four children. At a hearing on January 30, 2024, the Debtor testified that, at the time he filed his petition and continuing to the present: (1) he had held title to the Property with his wife continuously since July 2009 (ECF No. 29 at 9:35–9:44); (2) he had been temporarily separated from occupancy of the Property for the safety of himself and his children, (ECF No. 29 at 14:00–16:19); (3) he had been living on a temporary basis with various relatives since being separated from the Property, (ECF No. 29 at 28:14–29:31); (4) he had every intention of returning to live at and occupy the Property as his primary residence, which is further supported by the July 10, 2023, Proposed Order; (ECF No. 29 at 16:20–17:07; 33:52–34:50; *see also* ECF No. 31, Ex. Q); (5) that the majority of his personal possessions and furniture remained at the Property (ECF No. 29 at 33:52–34:50); and (6) that he continued to

visit his children who reside at the Property (ECF No. 29 at 36:38–36:54; 16:20–17:07; *see also* ECF No. 31, Ex. Q). On cross-examination, the Debtor testified that he was receiving his mail at a Post Office Box and not at the Property on the petition date, and that he now currently lives at an apartment with his girlfriend at a location in Manchester, Connecticut, but did not reside there or with this person as of the petition date. (ECF No. 29 at 36:38–37:21). In any event, nothing in the record of the hearing established that the Debtor created a new primary residence as of the petition date.

## II.     JURISDICTION

The United States District Court for the District of Connecticut (the "District Court") has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a), (b)(1) and the General Order of Reference of the District Court dated September 21, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B).

## III.    STANDARD OF REVIEW

In Connecticut, any "natural person" may claim an exemption in a homestead up to $250,000, calculated based on the fair market value of the property less the amount of any consensual or statutory lien. Conn. Gen. Stat. § 52-352b(21). Absent any timely objection, a debtor's claim of exemption is presumptively valid. 11 U.S.C. § 522(l). As the objector, the Trustee bears the burden of proving, by a preponderance of the evidence, that the Debtor's claimed homestead exemption is improper. *See* Fed. R. Bankr. P. 4003(c); *In re Shaw*, 622 B.R. 569, 578 (Bankr. D. Conn. 2020). This burden applies to each element of the Trustee's Objection. *Id*. Under Connecticut state law, a debtor may claim a homestead exemption in "owner-occupied real property . . . used as a primary residence." Conn. Gen. Stat. § 52-352a(5); *In re Maresca*, 982 F.3d 859, 863 (2d Cir. 2020). Thus, there are three requisites, measured as of

the petition date, for the Property to constitute the Debtor's statutory homestead under Connecticut law: (1) the Debtor must own the Property; (2) the Debtor must occupy the Property; and (3) the Property must be the Debtor's primary residence. *In re Kujan*, 286 B.R. 216, 220 (Bankr. D. Conn. 2002).

> In addition, in attempting to construe the Connecticut homestead exemption, we must bear in mind the firmly established canon of interpretation instructing that, in order to effectuate the purpose of exemptions, such laws are to be liberally construed in favor of the debtor. "For this reason, no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed."

*KLC, Inc. v. Trayner*, 426 F.3d 172, 176 (2d Cir. 2005) (quoting *Caraglior v. World Sav. & Loan (In re Caraglior)*, 251 B.R. 778, 783 (Bankr. D. Conn. 2000)).

Accordingly, to prevail on her Objection that the Property does not constitute the Debtor's homestead for purposes of Conn. Gen. Stat. § 52-352b(21), the Trustee must produce evidence to rebut the Debtor's presumptively valid exemption demonstrating, that as of the petition date: (1) the Debtor did not own the Property; (2) the Debtor did not occupy the Property; or (3) the Property was not the Debtor's primary residence. If the Trustee presents sufficient evidence to rebut the presumption, then the burden of production shifts to the Debtor to present unequivocal evidence demonstrating that his exemption is proper. *See In re Riemann*, No. 09-0226, 2009 WL 3254486, at *2, (Bankr. D. Conn. Oct. 7, 2009) (quoting *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)). "The burden of persuasion, however, always remains with the objecting party." *Id*.

### IV.   DISCUSSION

First, the Trustee seems to contend that the Debtor does not own the Property in the context of the *pendente lite* order (Objection at ¶ 8 ("the Debtor did not hold and occupy the real property")). *Pendente lite* orders, however, "by their very definition, are orders that continue to

4

be in force 'during the pendency of a suit, action, or litigation.'" *Febbroriello v. Febbroriello*, 21 Conn.App. 200, 206, 572 A.2d 1032, 1036 (1990). "[*Pendente lite*] orders necessarily cease to exist once a final judgment in the dispute has been rendered because their purpose is extinguished at that time." *Connolly v. Connolly*, 191 Conn. 468, 480, 464 A.2d 837, 844 (1983), *overruled in part on other grounds by Darak v. Darak*, 210 Conn. 462, 556 A.2d 145 (1989). Section 46b-83 of the Connecticut General Statutes provides that the Superior Court may "award exclusive use of the family home or any other dwelling unit which is available for use as a residence pendente lite to either of the parties as is just and equitable *without regard to the respective interests of the parties in the property*." Conn. Gen. Stat. § 46b-83 (2023) (emphasis added). As a result, *pendente lite* orders do not initially permanently divest an individual of their rights in real property unless and until a final judgment should merge the *pendente lite* order into a final decree. *See Tobey v. Tobey*, 165 Conn. 742, 745, 345 A.2d 21, 24 (1974). A *pendente lite* order is therefore merely a useful temporary expediency in dissolution actions as it promotes comity between the parties and attempts to alleviate the stress on the family unit by removing proximity as an instigator of conflict; it is not intended to be used or construed as an instrument of permanent dispossession.

      Here, the Debtor testified and provided a sworn affidavit that he still holds title to the Property and that he pays the mortgage and carrying costs associated with the Property in accordance with the *pendente lite* order (ECF No. 19, Ex. B). This Court therefore concludes that, while the *pendente lite* order may award "exclusive use and possession" to the Debtor's spouse, it does not deprive the Debtor of his ownership rights in the Property. (*See* ECF No. 31, Ex. C).

Second, the Trustee contends that the Debtor does not occupy the Property. (Objection at ¶¶ 8–9). The term "occupy" remains undefined in the context of Connecticut's homestead exemption. *See, e.g.*, *In re Faherty*, No. 21-30799, 2022 WL 1191256, at *6 (Bankr. D. Conn. Apr. 20, 2022). Under Connecticut law, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes." Conn. Gen. Stat. § 1-2z. As to undefined terms used in the text of a statute, "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. U.S.*, 444 U.S. 37, 42 (1979) (citation omitted). As a result, the Court turns to *Black's Law Dictionary* (11th ed. 2019), which defines "occupy" as "[t]o take up the extent, space, room, or time of" and "to live or stay in (a place)."[1] *See Est. of Owens v. CTRE, LLC*, 123 Conn.App. 61, 66, 998 A.2d 1285, 1288–89 (2010) (noting that the Connecticut Supreme Court routinely consults Black's Law Dictionary regarding undefined terms in statutes).

The presence of most of the Debtor's possessions on the Property, the presence of his wife and children, the Debtor's resolve and intention to return, and the inherently transient nature of the Debtor's separation militate in favor of this Court's finding that he continued in his occupancy of the Property.[2] The Debtor meets the definition of "occupy" provided by Black's Law Dictionary as he was indeed taking up the extent, space, and room of the Property, and, while not sleeping at the Property, continued to "stay" at the Property with his family. Consistent with his intended return and his lifestyle, his stated positions in his divorce where he is seeking a

---

[1] This is also substantially in line with contemporaneous definitions. For instance, although *Black's Law Dictionary* (7th ed. 1999) does not define "occupy" itself, it defines "occupancy" as "[t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, esp. of a dwelling or land." Similarly, *Black's Law Dictionary* (7th ed. 1999) also defines "occupant" as "[o]ne who has possessory rights in, or control over, certain property or premises."

[2] The Court is also influenced by the fact that the federal homestead exemption recognizes familial occupancy as a form of occupancy. *See* 11 U.S.C. 522(d)(1).

6

permanent nesting arrangement provide clear indicia of that intent. Regarding this last point, the Court is struck by other examples of transient separation that would generally not defeat a homestead exemption on the basis of occupancy or primary residency, such as soldiers deployed abroad, people experiencing extended stays in rehabilitation centers or nursing homes, and even those on extended vacations or job assignments.

Beyond the semantics, this Court also takes note of several cases from New York and New Hampshire that have addressed the occupancy requirement of their respective homestead exemptions in the context of a concurrent dissolution of marriage. *See, e.g.*, *In re Smith*, 57 B.R. 81 (Bankr. W.D.N.Y. 1985); *In re Eckols*, 63 B.R. 523 (Bankr. D.N.H. 1986). Of particular note are the policy considerations discussed by the Bankruptcy Court for the Western District of New York in *Smith*:

> To read ["occupy"] literally would permit creditors to dismantle property rights of the parties to a matrimonial dispute before the State courts have the opportunity to act to safeguard those interests and, perhaps, even more important, the interests of any children of the marriage. It would encourage, it not require, the often hostile parties to a matrimonial dispute to continue to share the marital abode on penalty of loss of property rights. The potential for harm to a spouse or to children in such circumstances hardly need be elaborated upon. In sum, literal reading of the word would not be consonant with strong, well-established, and long standing policies of the State of New York and hardly would have been within the intent of the Legislature.
>
> This Court, therefore, concludes the New York courts would not construe absence from the marital abode pending final resolution of property rights by its courts to constitute an abandonment of rights of residency or occupancy of a homestead under section 5206 of New York's Civil Practice Law and Rules.

*Smith*, 57 B.R. at 82–83.

Similarly, the court in *Eckols*, which considered *Smith* in its decision, held that:

> In the absence of any contrary New Hampshire decision, and being persuaded by the correctness of the foregoing analysis from the *Smith* decision, I conclude that the New Hampshire courts would likewise honor the homestead exemption claim of a spouse involuntarily separated from occupancy of the homestead property

> during a pending divorce proceeding. In the Eckols case this result is clearly foreshadowed by the New Hampshire decisions inasmuch as the evidence in that case establishes a consistent intent to return to the family home by the debtor notwithstanding his temporary absence pending the custody resolution.

*Eckols*, 63 B.R. at 527.

This Court is also persuaded by the correctness of the above analysis. This Court therefore concludes that, while the *pendente lite* order provided exclusive use and possession of the property to the Debtor's wife, it did not terminate his constructive occupancy in light of both the definition of "occupy," as well as an understanding of the role and purpose of the statute in the broader tapestry of Connecticut family law.

Third, the Trustee contends that the Property is not the Debtor's primary residence. (Objection at ¶¶ 8–9).

> The term "primary residence" as it is used in the exemption statute has not been defined in any Connecticut case. However, cases from other jurisdictions . . . indicate that the facts and circumstances concerning the owner's absence from or presence in the property are determinative in concluding whether or not the property is to be treated as a "primary residence." The cases also hold that claims of exemption are to be liberally construed in favor of the owner who is claiming the exemption.

*Konover Constr. Corp. v. Silberstein*, 2003 WL 21805576, at *2 (Conn. Super. Ct. July 22, 2003); *see also In re Cole*, 642 B.R. 208 (Bankr. D. Conn. 2022).

Here, the Debtor's furniture, wife, and minor children remained at the Property, as well as the balance of the Debtor's possessions. Further, the Debtor testified that he steadfastly intended to return and continue to live at the Property after the conclusion of the divorce proceedings. The testimony regarding the Debtor's "residences" as of the petition date—to the extent that his transient stays on couches and cots can be termed as such—also weighs in favor of the Property remaining as the Debtor's primary residence. There was no evidence presented that the Debtor's motor vehicle or voting registration had changed or that he secured a new lease

or home as of the petition date. The Court is again struck by the same previously enumerated examples of transient separation from a property, that would also not generally be considered a relinquishment of a primary residence. As a result, under the facts and circumstances of this case, the Court also concludes that the Property remains the Debtor's primary residence for the purpose of the exemption.

V.   **CONCLUSION**

For the reasons stated above, the Court finds that the Trustee has failed to satisfy her burden in demonstrating that the Debtor's claimed homestead exemption is improper. The Trustee's Objection is therefore OVERRULED.

**IT IS SO ORDERED** at Hartford, Connecticut this 22nd day of February 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut